Merrimack,
No. 4791.

### EDNAH EMERSON *v.* WILLIAM BAILEY, JR.

### JAMES EMERSON *v.* SAME.

Argued November 4, 1959.

Decided December 31, 1959.

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the plaintiffs.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Peter J. Bourque* (*Mr. Bourque* orally), for the defendant.

WHEELER, J.   The defendant's chief contention is that the plaintiff was guilty of contributory negligence as a matter of law. The defendant concedes " . . . that each case rests upon the particular facts out of which it grew." The question here is whether all reasonable persons must find that the plaintiff failed to meet the standard of the care of the ordinary person of average prudence under the same or similar circumstances.

It was findable that on December 16, 1955 the plaintiff, Ednah Emerson, was operating a motor vehicle in a northerly direction on the main road from Hopkinton to Contoocook. It was dark. The weather was fair and clear and the road surface was dry. There was a yellow line in the center of the highway and a snow-bank on the right-hand side of the highway some five inches high. Immediately prior to the collision, she had proceeded up a hill and then on to a gradual, straight rise with a visibility of some 1400 feet. At this point she observed the headlights of two motor vehicles approaching. She dimmed her headlights and reduced her speed to thirty-five or forty miles per hour. The plaintiff was then several hundred feet south of the point of collision. The head-lights affected her view if she looked directly ahead. As the cars continued to approach from the north, her vision became increasingly obscured, although she was, as she describes it, "not exactly blinded" and "I couldn't look right into the lights of the car so I was watching the yellow line and the little snowbank on

the other side, to be sure that I didn't get out of my lane." She continued on her course in the right lane until the cars passed her and immediately collided with the defendant's car parked directly in her lane of travel without lights or other warning devices. The plaintiff's headlights, on high beam, would illuminate the highway for a distance of 300 feet and on low beam for 200 feet.

Typical of the authorities cited by the defendant to support his claim of contributory negligence on the part of the plaintiff are *Murphy* v. *Granz*, 91 N. H. 244; *Fine* v. *Parella*, 92 N. H. 81 and *Masters* v. *Public Service* Co., 92 N. H. 85. These cases deal broadly with the duty of a plaintiff under varying circumstances to keep a proper lookout or to drive in an appropriate manner in anticipation of dangers which may reasonably be expected to lie ahead.

"While ordinarily a person may rightfully assume that others will act carefully he is not entitled to assume that their conduct will be perfect. *Lovett* v. *Railway*, 85 N. H. 345, 350. Moreover, it is commonly understood that there are some automobile operators who act 'with less than normal propriety.' Charged with a realization of this fact, a motorist, under certain conditions, may be required 'to anticipate and provide against that occasional negligence' which is one of expectable incidents of highway traffic." *Himmel* v. *Finkelstein*, 90 N. H. 78, 79.

We are not of the view, however, that without prior warning or reason to anticipate dangers ahead, due care requires that every driver must bring his motor vehicle to a stop upon the approach of headlights to await the diminution of the blind spot which every driver knows occurs when approaching a vehicle coming in the opposite direction in the nighttime. If such was the required standard of care under normal circumstances, the flow of traffic would be intermittently interrupted creating a chaotic traffic situation which would undoubtedly cause more accidents than it prevented.

It is a common occurrence for the vision of an operator to be momentarily impaired by lights coming from the opposite direction. *Putnam* v. *Bowman*, 89 N. H. 200, 205. The plaintiff, upon first viewing the approaching headlights, reduced her speed, dimmed her lights and continued on her course, meanwhile watching the yellow center line on her left and the snowbank on the right. It was findable that she had some vision and did not drive blindly into space "with [her] eyes closed." *Cole* v. *Morse*, 85 N. H. 214, 217.

*Cf. Tufts* v. *White,* 92 N. H. 158; *Brox's Dairies* v. *Boston & Maine R. R.,* 101 N. H. 386. In these circumstances she continued ahead and struck the left rear of the defendant's dark-colored motor vehicle standing squarely in her lane without lights. It is not carelessness to encounter dangers not reasonably to be sensed nor in fact known, or to fail to guard against their consequences. *Jackson* v. *Smart,* 90 N. H. 153; *Miller* v. *Daniels,* 86 N. H. 193; *Piateck* v. *Swindell,* 84 N. H. 402.

We are of the view that the facts here presented a question for the jury. The defendant's exceptions to the Court's denial of his motions for a nonsuit and directed verdict are overruled.

During the course of the trial the defendant moved to strike out the answer of the plaintiff's family doctor to the question "How did she behave toward her illnesses and diseases prior to the accident?" The witness answered: "I think I have already testified that she was working and supporting her own immediate family, and had done more than that in that she provided for some children. As I say, I don't know the exact relationship." In moving to strike the defendant characterized the witness' answer as "highly improper" and "prejudicial."

It was competent for the plaintiff to present evidence of her condition before the accident as contrasted with her condition afterward. The doctor had previously testified without objection concerning the plaintiff's pre-accident chronic ailments and to the fact that "in spite of [them] . . . she was still able to carry on a very active schedule which included taking care of her invalid husband, providing care for one or two children . . . a fair amount of care for them." Because the answer which the defendant sought to have stricken was a repetition and corroboration of testimony already given without objection, the motion was properly denied in the discretion of the Trial Court and the defendant's exception is overruled. *Bennett* v. *Bennett,* 92 N. H. 379, 385. Whether the defendant's motion invoking the undue prejudice rule should have been granted had it been seasonably made is a question not presented. *Sweeney* v. *Willette,* 98 N. H. 512; *O'Malley* v. *McGillan,* 86 N. H. 186.

*Judgment on the verdicts.*

All concurred.